# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 12-1293 (ABJ) |
|  | ) |  |
| U.S. DEPARTMENT OF COMMERCE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, NATIONAL MARINE FISHERIES SERVICE, | ) ) ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION

Plaintiff Public Employees for Environmental Responsibility ("PEER") brings this lawsuit against defendant United States Department of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service ("NMFS"), alleging that NMFS violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), by improperly denying PEER's request for a fee waiver. Compl. ¶ 31. PEER seeks an injunction compelling NMFS to grant the fee-waiver request and release the documents sought. Compl. at 9. The parties have cross-moved for summary judgment. *See* Def.'s Mot. for Summ. J. [Dkt. # 12] ("Def.'s Mot."); Pl.'s Mot. for Summ. J. [Dkt. #13] ("Pl.'s Mot."). The Court will grant summary judgment in favor of NMFS because, although PEER has standing to bring this claim, the Court finds on the merits that NMFS's denial of the fee-waiver request was proper because there is no sufficient public interest in disclosure of the requested information.

## I. BACKGROUND

### A. Factual Background

PEER is a non-profit, public-interest organization that focuses on public policy issues related to the environment, public lands, and natural resources management. Compl. ¶ 12. On December 14, 2004, PEER electronically submitted a request under FOIA (FOIA Request No. 2012–00249) and the Privacy Act to NMFS, seeking documents related to a former observer for the NMFS observer program, Jonathan Lee Combs.[1] *See* AR 00001–08; Compl. ¶ 21. The Complaint alleges that between 2006 and 2011, Combs was contracted as a "Fisheries Observer" for the NMFS Pelagic Observers Program ("POP"). Compl. ¶ 15. On July 29, 2011, Combs was informed by e-mail that NMFS would no longer be using his services because "of difficulties in working with him." Compl. ¶ 17. The termination e-mail Combs received referenced a prior e-mail that Combs had sent to an NMFS program manager regarding what Combs saw as potential legal violations committed by NMFS. Compl. ¶ 17. PEER claims that, prior to sending the termination e-mail, NMFS did not advise Combs that his performance was not adequate or warn Combs that he would be terminated, which violates POP's performance evaluation protocols for terminating an observer. *See* Compl. ¶¶ 18–20.

The FOIA request sought: (1) all evaluation, incidents or other files on Combs maintained within NMFS; (2) all communications with observer contractors or other third parties that mention Combs; and (3) any documents or instructions that reference Combs. AR 00002; Compl. ¶ 21. Attached to the request was a sworn declaration signed by Combs that authorized the release to PEER of any information responsive to the FOIA request that concerned Combs. AR 00006. Combs's declaration stated that PEER had filed the FOIA request "on my behalf."

---

1       Though PEER's original request was made pursuant to FOIA as well as the Privacy Act, *see* Compl. ¶ 3, PEER's complaint in this action does not allege that defendant violated the Privacy Act.

*Id.* The request itself stated that PEER, "on behalf of Dr. Charles Monnett (see attached Privacy Act statement and authorization to release information to PEER from Mr. Jonathan Lee Combs), is requesting information related to [Combs'] assignments, evaluation and other pertinent matters." AR 00002.[2] The request was signed by PEER Executive Director Jeff Ruch and was sent from Ruch's official PEER e-mail address directly to NMFS FOIA Officer Michael Justen. AR 00001. PEER also sought a fee waiver and provided the following justification for its fee-waiver request:

> PEER requests that all fees be waived because disclosure of the information is in the public interest . . . and is not primarily in the commercial interest of the requester:
>
> 1. *The records concern the operations and activities of the Government.*
> The FOIA request is, by its terms, limited to identifiable activities of NMFS employees, contractors and subcontractors.
>
> 2. *The disclosure of the requested records is likely to contribute to public understanding of these operations and activities.*
> The requested material concerns how agency evaluation of fishing fleet observer performance as well as whether there has been retaliation against an observer for raising potential violations of law or regulation [*sic*]. Our FOIA request . . . will generate the paper trail enabling the general public to understand precisely how NMFS operates its observer program.
>
> 3. *The release of these requested records will contribute significantly to public understanding of the governmental activities.*
> While it is difficult to warrant in advance to seeing it just how [*sic*] significant the information will be to the general public, the nature of the information should shed direct light on how well the NMFS observer program works in accomplishing its central resource protection mission.
>
> While a certain segment of the population has a keen interest in the sustainability of fishing harvests . . . as well as the negative impacts of fishing practices . . . the broader public interest served by this request concerns whether the NMFS fishing observer program is being mismanaged.

---

2      Another copy of the request letter, which is attached to PEER's appeal of defendant's initial denial of its request for fees, states that PEER "on behalf of *Mr. Jonathan Lee Combs* (see attached Privacy Act statement and authorization to release information to PEER), is requesting" the information. AR 00012 (emphasis added).

In addition, the general public has a keen interest in whether observers are being pressured to overlook violations or are punished if they report [the] same…

PEER intends to provide the requested information to members of Congress and its relevant committees. We also intend to disseminate it to the general public though [*sic*] – Release to the news media; Posting on the PEER webpage which draws between 1,000 and 10,000 viewers per day; and Publication in the PEER newsletter which has a circulation of approximately 20,000 . . . .

AR 00013–14 (citations and formatting omitted).

NMFS timely acknowledged receipt of plaintiff's FOIA request, including the fee-waiver request. AR 00015. NMFS denied PEER's fee-waiver request in a letter dated April 4, 2012. This letter was addressed to PEER Executive Director and, other than a passing reference to the documents themselves, did not mention Combs or address him as the party requesting the documents. AR 00007–08; Compl. ¶ 23. NMFS denied the fee waiver because it "[found] it unlikely that records related to a single observer would significantly contribute to the public's understanding of the larger observer program." AR 00008; Compl. ¶ 23.

NMFS sent PEER a fee estimate letter, which was dated April 25, 2012. Ex. 1 to Rilling Decl. [Dkt. # 12-3]. In this letter and in all communications between NMFS and PEER that occurred prior to this lawsuit and that are included in the administrative record, NMFS acknowledged PEER as the party requesting the documents. AR 00007–11, 00015, 00027–28; Ex. 1 to Rilling Decl. On November 6, 2012, as part of the pleadings in this lawsuit, a representative of NMFS stated that "[t]he letter dated April 25, 2012 [*sic*] providing Plaintiff with a fee estimate misidentified the requester as PEER. The actual requester is the individual on whose behalf PEER filed the request, Jonathan Lee Combs." Rilling Decl. ¶ 6.

### B. Procedural Background

On April 19, 2012, PEER filed a timely administrative appeal of NMFS's denial of the fee-waiver request, stating that the records would be "extremely helpful in providing the general public with in-depth understanding of important aspects of the observer program at large." AR 00010. In a letter dated May 30, 2012, NMFS acknowledged receipt of PEER's appeal and upheld its prior decision to deny the fee waiver. AR 00027–28. NMFS upheld the denial on the grounds that the information sought, which related to a single observer, was unlikely to provide the public insight into the observer program as a whole. *Id.* The letter further stated that, even if the documentation was to provide such insight, this information would not "significantly contribute to the public understanding of specific government operations." *Id.* The letter also informed PEER of its right, as the party requesting the documents, to obtain judicial review of the denial of the fee-waiver request. *Id.*

PEER has now fully exhausted its administrative remedies under FOIA and has filed a complaint in this Court seeking judicial review of NMFS's decision to deny its fee-waiver request. Compl. ¶ 29. On November 8, 2012, NMFS moved for summary judgment, arguing that PEER lacked standing to bring suit and that PEER failed to demonstrate that NMFS's denial of the fee-waiver request was improper as a matter of law. Def.'s Mem. at 1–2. In support of its motion, NMFS submitted affidavits by NOAA FOIA Officer Wendy Schumacher and NMFS National Observer Program Manager and Science and Technology FOIA Coordinator Gene Christopher Rilling, as well as attachments to the affidavits, including an administrative record. [Dkts. # 12-1, 12-2, 12-3]. On December 7, 2012, PEER responded and cross-moved for summary judgment, arguing that PEER did have standing to bring the action because it was the

original FOIA requester and that NMFS, as a matter of law, improperly denied the fee-waiver request.  Pl.'s Mem. at 1–2.

## II.        STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Washington*

*Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247. On judicial review, "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

## III.    ANALYSIS

When a court is faced with challenges to subject matter jurisdiction and the merits of a claim, it must address the jurisdictional question before addressing the merits. *National Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012), citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). The Court will therefore first address PEER's standing to bring its claim.

### A.  PEER has standing to challenge NMFS's denial of the fee-waiver request.

PEER has standing to challenge the NMFS's decision to deny the request for a fee waiver because PEER made the original FOIA request and is therefore a real party-in-interest to the fee-waiver dispute before the Court. The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). FOIA requires that, barring certain exemptions, "each agency, upon any request for records which (i) reasonably describes such records and (ii)

is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to *any person*." 5 U.S.C. § 552 (3)(A) (emphasis added). The term "any person . . . includes individuals, partnerships, corporations, associations and foreign and domestic governments." *MAXXAM, Inc. v. F.D.I.C.*, 1999 WL 33912624, at *2 n.1 (D.D.C. Jan. 29, 1999). "[A]ny person who submits a [FOIA] request may obtain access to governmental records regardless of whether they have a personal stake in the information sought." *McDonnell v. United States*, 4 F.3d 1227, 1237 (3d Cir. 1993) (finding that legislative history demonstrates that Congress intended FOIA requests to be made by anyone but that a person unnamed in a particular FOIA request who does not pursue an appeal of agency action has no right to receive documents and no standing to sue). A party submitting a FOIA request is therefore not required to explain the reason behind its request. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). FOIA also requires that any administrative fees be waived or reduced if disclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. *See* 5 U.S.C. § 552(a)(4)(A)(iii).

In an action challenging an agency's response to a FOIA request, the party making the FOIA request is a real party-in-interest and, as a result of the legal right created by the statute, has standing to bring an action against the agency. *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (indicating that a *pro se* attorney litigant who brought suit on behalf of an undisclosed client had standing to challenge agency's denial of his FOIA request and was not required to demonstrate his particular need for the information). It is well understood that, when Congress enacts a statute like FOIA that creates legal rights, "the invasion of [the legal rights] creates standing, even though no injury would exist without the

statute." *Zivotovsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006), citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). "Although it is natural to think of an injury in terms of some economic, physical, or psychological damage, a concrete and particular injury for standing purposes can also consist of the violation of an individual right conferred on a person by statute. Such an injury is concrete because it is of a form traditionally capable of judicial resolution, and it is particular because, as the violation of an individual right, it affects the plaintiff in a personal and individual way." *Id*. at 619 (internal citations omitted). "The requester is injured-in-fact . . . because he did not get what the statute entitled him to receive." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 254. Just as a party is not required to have a personal stake in agency information in order to request the information, the party is not required to have such a stake in order to challenge the agency's denial of the request. *See Zivotovsky*, 444 F.3d at 617 (stating that "the requester's circumstances—why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose . . . are irrelevant to standing.").

When faced with a FOIA request filed by one party but concerning another, a court will consider various factors in order to determine which of the two parties is actually the "FOIA requester." *See Dale v. IRS*, 238 F. Supp. 2d 99, 102–03 (D.D.C. 2002). In *Dale,* the plaintiff, Dale, filed a FOIA request with the IRS without a request for a fee waiver. *Id.* at 101. The request was on letterhead from Judicial Watch – a third-party advocate group. *Id.* at 101–102. Judicial Watch was not a signatory to the request. *Id.* One year after filing the request, Dale requested a fee waiver on behalf of Judicial Watch. *Id.* The IRS denied the request for fee waiver. *Id.* In reviewing that decision, the court held that Dale was the FOIA requester because he had signed the request, filled out and signed the IRS FOIA forms, and was previously referenced by the IRS as the requester. *Id.* at 106–07.

Here, PEER has standing to challenge the NMFS's denial of the fee-waiver request because PEER is the FOIA requester. Several uncontested facts support this determination. First, the FOIA request was signed by a PEER executive. Second, it was sent from an official PEER e-mail account. And third, NMFS acknowledged PEER as the person making the request, or the "FOIA requester," in every communication that it had with PEER before this litigation commenced. Though not dispositive, the Court finds it instructive that NMFS sent its initial response to the request to PEER, not to Combs. *See* 5 U.S.C. § 552(a)(6)(A)(i) ( "Each agency . . . shall determine within 20 days . . . after the receipt of such request whether to comply . . . and shall immediately notify *the person making such request* of such determination.") (emphasis added). NMFS also informed PEER, not Combs, about the right to appeal the determination. *Id.* (stating that the agency shall also "notify the *person making such request* . . . of [his] right . . . to appeal to the head of the agency any adverse determination.") (emphasis added). NMFS's apparent understanding that PEER was the FOIA requester at all times until PEER filed this lawsuit undercuts its assertion now that Combs is actually the FOIA requester. *See* Rilling Decl. ¶ 6. (stating that "[the April 25, 2012 fee-estimate letter] misidentified the requester as PEER . . . [but the] actual requester is the individual on whose behalf PEER filed the request, Jonathan Lee Combs."). On the basis of these facts, the Court is satisfied that PEER is a FOIA requester for purposes of its standing to challenge the agency's denial of its fee-waiver request.

While NMFS presents a number of cases that deal with the issue of party standing in FOIA cases, none of these cases address the issue before the Court.[3] *See* Def.'s Mem. at 5–6, citing *Burka*, 142 F.3d 1286, 1291; *Three Forks Ranch v. Bureau of Land Mgmt., Little Snake Field Office*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005); *MAXXAM,* 1999 WL 33912624 at *7 n.2. The common issue in all three of these cases was not whether the party who filed the FOIA request had standing, which is the issue before this Court, but rather whether the party *on whose behalf* the request was being made had standing to challenge the agency's decision. Here, there is no dispute that PEER made the request on Comb's behalf. The question of whether some party other than the FOIA requester has standing is not before this Court, and these cases do not shed any light on the question that is. In fact, *MAXXAM* and *Burka* actually support the Court's determination that PEER does have standing, since it was taken by the courts as given that the original requester, akin to PEER in this case, had standing.

NMFS argues that courts should only look to the language of the FOIA request and are not required to look beyond the "four corners of the request," in order to ascertain the real party-in-interest. Def.'s Mem. at 5 n.4. According to NMFS, given that the requested information pertains to Combs, Combs is the real party-in-interest, not PEER. *Id.* While the Court agrees with the legal proposition that the requesting parting is the individual named in the request, it does not agree with NMFS's application of this proposition. The plain language here,

---

3       NMFS also contends that, under *Murray v. BOP*, 741 F. Supp. 2d 156, 161 (D.D.C. 2010), the fact that the FOIA request was also brought under the Privacy Act further demonstrates that Combs was the requester and real party-in-interest because the Privacy Act only allows individuals to request records. Def.'s Mem. at 6–7 n.5. However, simply because PEER decided to request information under the Privacy Act does not demonstrate that PEER was not submitting the FOIA request under its own name. Furthermore, the issue of whether or not PEER had authority under the Privacy Act to request records is irrelevant, given that PEER does not claim that NMFS violated the Privacy Act.

specifically the appearance of the signature of a PEER executive director and the text justifying the fee waiver from the perspective of PEER as the requester, plainly indicates that PEER is the real party-in-interest.  The fact that the requested information pertains to a third-party individual does not deprive the requesting party of standing to challenge the agency action.

### B.  PEER fails to demonstrate that NMFS improperly denied the fee-waiver request.

On the merits, however, the Court finds that NMFS's denial of the fee-waiver request was proper because there is no sufficient public interest in disclosure of the requested information.  Under FOIA, agencies can typically impose a fee on the requester, which offsets the agency's costs of searching for and providing the documents.  *See* 5 U.S.C.  § 552(4)(A)(i).  However, FOIA requires that agencies waive this fee "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(4)(A)(iii).  FOIA allows each agency, in order to implement this general provision, to promulgate its own procedures and guidelines for determining when a waiver is warranted.  *See* 5 U.S.C. § 552(4)(A)(i).  A court must consider both the FOIA statute as well as the agency regulations when determining whether an agency improperly denied a fee-waiver request.  *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003).  A court, however, is not bound by the agency guidelines.  *Id*. (determining that the court owes "no particular deference" to IRS interpretation of the FOIA fee-waiver provision).

Pursuant to its FOIA authority, the Department of Commerce established a two-prong test for determining whether a particular FOIA request merits a fee waiver that parallels the statutory requirement.  15 C.F.R. § 4.11(k) (2001).  The Department of Commerce regulations state that the party seeking the waiver must demonstrate that disclosure of the requested

information is (a) "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government" and (b) "is not primarily in the commercial interest of the requester." 15 C.F.R. § 4.11(k)(1). To determine whether prong (a) has been met, Department of Commerce components "shall" consider the following factors:

> (i) The subject of the request: whether the subject of the requested records concerns the operations or activities of the Government. The subject of the requested records must concern identifiable operations or activities of the Federal Government, with a connection that is direct and clear, not remote or attenuated.

> (ii) The informative value of the information to be disclosed: whether the disclosure is "likely to contribute" to an understanding of Government operations or activities. The disclosable portions of the requested records must be meaningfully informative about Government operations or activities in order to be "likely to contribute" to an increased public understanding of those operations or activities. The disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not be likely to contribute to such understanding.

> (iii) The contribution to an understanding of the subject by the public likely to result from disclosure: whether disclosure of the requested information will contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media satisfies this consideration. Merely providing information to media sources is insufficient to satisfy this consideration.

> (iv) The significance of the contribution to public understanding: whether the disclosure is likely to contribute "significantly" to public understanding of Government operations or activities. The public's understanding of the subject in question prior to the disclosure must be significantly enhanced by the disclosure.

15 C.F.R. § 4.11(k)(2).

The requester carries the burden of demonstrating that the disclosure of the information is in the public interest, *see Larson v. CIA,* 843 F.2d 1481, 1483 (D.C. Cir. 1988) (per curiam), and, though not bound by the agency guidelines, a court may apply the agency factors in order to determine if the requester has met its burden. *Id.* The requester must meet its burden with

"reasonable specificity" rather than mere conclusory allegations. *Id.*, quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987). Judicial review of a fee-waiver decision is *de novo* and limited to the record that was before the agency.[4] 5 U.S.C. § 552(a)(4)(A)(vii); *Larson,* 843 F.2d at 1483. A court may only consider only the arguments and justifications of the parties that appear in the administrative record and may not consider any arguments that appear for the first time in pleadings. *See Bensman v. National Park Service,* 806 F.Supp.2d 31, 37 (D.D.C. 2011); *Judicial Watch v. General Services Administration*, 2000 WL 35538030 at *4.[5]

1.      **The Fee-Waiver Analysis:  The Commercial-Interest Prong**

        The parties here agree that PEER's request for a fee waiver satisfies the commercial-interest prong of the fee-waiver analysis. PEER stated, in the request itself, that "[d]isclosure is in no way connected with any commercial interest of the requesters in that PEER is a nonprofit, nonpartisan public interest organization concerned with upholding the public trust through responsible management of our nation's resources and with supporting professional integrity within public land management and pollution control agencies." AR 00014. NMFS does not

---

4       Congress amended the FOIA fee-waiver provision in 1987, changing the standard of judicial review from arbitrary and capricious to *de novo*. *See Larson*, 843 F.2d at 1483. Congress amended the fee-waiver provision in FOIA to ensure that it be "liberally construed . . . for non-commercial requesters." *McClellan*, 835 F.2d at 1284, quoting 132 Cong. Rec. 13,298 (1986) (Sen. Leahy).

5       The parties generally dispute how narrowly the Court should interpret the FOIA provision that states that judicial review of a fee-waiver denial is "limited to the record before the agency." *See* 5 U.S.C. § 552(a)(4)(A)(vii). They agree that the scope of judicial review is squarely limited to those justifications put forth by either party that appear in the administrative record but disagree about what exactly constitutes a "justification." While styled as a principled dispute, in practice the parties really only disagree about whether the Court can consider one argument made by NMFS – that PEER's assertion that the requested documents relate to the observer program was "nothing more than speculation." *See* Pl.'s Mem. at 16. Because the Court will not base its decision in this case on that particular argument, it need not decide whether it was raised below or not.

contend, in either its original denial letter or its subsequent appeal-denial letter, that the information requested was sought primarily for PEER's commercial interest. As a result, and as NMFS concedes, NMFS is barred from asserting now that PEER has a commercial interest in the information. *See* Def.'s Reply at 16. The Court thus finds it undisputed that the disclosure of the information was not primarily in the commercial interest of PEER and therefore that PEER has met its burden of demonstrating this prong of the two-pronged fee-waiver analysis.

**2.      The Fee-Waiver Analysis:  The Public-Interest Prong**

Since it is undisputed that PEER has satisfied its burden in relation to the commercial interest prong, the Court's determination on the merits turns solely on the remaining prong of the fee-waiver analysis, the public-interest prong. PEER must demonstrate with "reasonable specificity" that the requested information is likely to contribute significantly to public understanding of government operations and activities. *See Larson*, 843 F.2d at 1483. Although the Court is not required to base its analysis on the agency's implementing regulations, it finds them to be a useful guide. *See Larson*, 843 F.2d at 1483 (determining that the requester's inability to satisfy one of the four factors was "alone . . . a sufficient basis for denying the fee-waiver request."); *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1126 (D.C. Cir. 2004) (stating that the plaintiff must satisfy all four criteria); *Rossotti*, 326 F.3d at 1313 ("Because the government has organized its brief around these factors, we will organize our analysis around them as well. In doing so, however, we emphasize that we owe no particular deference to the IRS's interpretation of FOIA."). Under those regulations, the Court considers (1) the substance of the request, (2) the informative value of the information, (3) the requester's ability to disseminate the information, and (4) the likelihood that the information will contribute *significantly* to the public understanding. *See supra* Part III, quoting Agency Guidelines, 15

C.F.R. § 4.11(k)(2).  Neither party addresses these factors very comprehensively, *see* AR 00013–14 (PEER); AR 00017–18 (NMRS).  Nonetheless, the Court finds that PEER meets its burden in relation to the first and third factors of the public interest inquiry, but because PEER fails to satisfy the second and fourth factors, NMFS's denial of PEER's fee-waiver request was proper.

a)      **Factors 1 and 3:  The relation of the request to government operations and activities and the requester's ability to disseminate to a reasonably broad public audience.**

The Court first finds that PEER has met its burden in relation to the first and third factors, but barely so.  In regards to the first factor, PEER has adequately demonstrated that the subject of the request sufficiently relates to government operations and activities because it concerns routine administrative communications about a former contractor for a federal agency.  *See Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't. of Health & Human Servs.* 481 F. Supp. 2d 99, 107 (D.D.C. 2006) (finding that a request for contracts and records of contacts between HHS and media firms, which concerned routine administrative activities at a federal agency, related to government operations and activities); *Klein v. Toupin*, No. CIV 05–647(GK), 2006 WL 1442611, at *4 (D.D.C. May 24, 2006) (determining that a request to the U.S. Patent Trademark Office for documents related to an individual's suspension did relate to government operations and activities but did not meet what is required under the remaining factors to merit a fee waiver).  Still, PEER's showing is thin.  It is generally not enough that the information requested be a product of routine administrative agency activities.  *See Jarvik v. CIA*, 495 F. Supp. 2d 67, 73 (D.D.C. 2007) (finding that the mere fact that a federal agency created the report sought by the FOIA request did not alone demonstrate that the disclosure of the report would increase understanding of federal government operations and activities because the requester failed to articulate how the subject of the request related to United States operations).  Here, PEER requests routine agency communications about a single individual in

the observer program and does not articulate exactly how these communications relate to the general agency operations or the observer program as a whole. Furthermore, the subject of the request, Combs, was a contractor with the observer program, not even an employee. But, largely because NMFS has not contested NMFS's satisfaction of this factor,[6] the Court will find that the request does concern government operations and activities.

In relation to the third factor, PEER again barely meets its burden. PEER specifically articulates how and to whom it will disseminate the requested information. PEER's request states that it intends to disseminate the information "to members of Congress and its relevant committees," by "[r]elease to the news media," by "[p]osting on the PEER webpage which draws between 1,000 and 10,000 viewers per day," and through "[p]ublication in the PEER newsletter which has a circulation of approximately 20,000, including 1,500 environmental journalists." AR 00014. The D.C. Circuit has found this showing alone to be sufficient to demonstrate that disclosure of the information would reach a reasonably broad public audience. *See Rossotti*, 326 F.3d at 1314 (the requester met his burden by specifying in the request nine ways in which it would disseminate information and by including the approximate viewership numbers for each means of dissemination). Accordingly, the Court finds that PEER satisfied this factor.

**b)      Factor 2:  The informative value of the information sought**

PEER, however, fails to demonstrate that the requested information has informative value; *i.e.* that it is "likely to contribute" to public understanding of government operations or activities. 15 C.F.R. § 4.11(k)(2)(ii). In particular, PEER fails to articulate how the information

---

6       NMFS also did not argue that PEER's request failed to concern government activities or operations in correspondence prior to this lawsuit contained in the administrative record.

sought, which concerns one former contract worker in the NMFS observer program, will increase public understanding of government functions.

The informative value of requested information depends on "the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of government." *CREW v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 109 (D.D.C. 2006). Information related to one individual, such as the requested information at issue here, is not likely to clear that bar. *See Ortloff v. DOJ*, No. 02–5170, 2002 WL 31777630, at *1 (D.C. Cir. Dec. 11, 2002) (per curiam). In *Ortloff,* a federal prisoner filed an application for fee waiver for his FOIA request to the Department of Justice, which sought disclosure of his own criminal records. *Id.* The waiver was denied. *Id.* The D.C. Circuit upheld the agency's denial of the fee waiver because the requester did not demonstrate a public interest. *Id.* The court stated that "[i]nsofar as [the requester] seeks information to facilitate a challenge to his conviction, the court considers disclosure less likely to contribute to public understanding." *Id.* Similarly here, the information sought by PEER concerns only one individual. The only materials sought in the FOIA request are files *about Mr. Combs*, communications *that mention Mr. Combs*, and any other documents or instructions *that reference Mr. Combs*. AR 00002.

PEER asserts that the "[t]he requested material concerns agency evaluation of fishing fleet observer performance" and that "evaluations, communications and all other documents concerning Mr. Combs will generate the paper trail enabling the general public to understand precisely how NMFS operates its observer program." AR 00013. However, the requested documents do not concern NMFS's operation of its observer program; they concern NMFS's evaluations of, files on, and communications with one individual contractor. PEER also argues

that the documents have the potential to reveal widespread misconduct occurring in the NMFS observer program, including the violation of environmental protection laws, and the sanctioning of such misconduct by the observer program leaders. Pl.'s Mem. at 18–19. But the scope of PEER's actual document request to NMFS is narrow and does not seek information on these topics. The request does not seek information about reports of misconduct made by observers in the NMFS program or about the agency's response to any such reports; rather, it seeks only documents that reference Combs. *Cf. Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006) (finding informative value in requested information because the request sought information "regarding specific events that occurred within BOP facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended"). Accordingly, the Court finds PEER's descriptions of the informative value that the requested documents will have for increasing public knowledge of the functions of government is too attenuated. *See Larson*, 843 F.2d at 1483 ("An agency may infer a lack of substantial public interest when a public interest is asserted by not identified with reasonable specificity, and circumstances do not clarify the point of the requests.").

Moreover, even though information about the conduct of one individual might in some circumstances be likely to shed light on the functions of government, those circumstances are not present in this case. In *Judicial Watch v. Rossotti*, the plaintiff sought information about a conflicts-of-interest waiver executed by the Department Treasury Secretary for IRS Commissioner Charles O. Rossotti, the Commissioner's relationship with a private company doing business with the IRS, and decisions by the IRS involving the private company. 326 F.3d 1309, 1313 (D.C. Cir. 2003). The D.C. Circuit found informative value in this information for increasing the public's understanding of IRS operations because the disclosure of the documents

was "likely" relevant to whether a commissioner of the IRS awarded a government contract to a company he co-founded and in which he held stock. *Id.* ("[T]he question here is not whether Rossotti had such a conflict, but whether disclosure of the requested documents is likely to contribute to public understanding of IRS operations – a goal that disclosure will promote regardless of what the documents reveal."). The court acknowledged the plaintiff's justification that "[t]he American people should be made aware of, among other things, reports, investigations, decisions, waivers and findings of fact concerning conflicts-of-interest by high government officials and heads of various agencies and departments, in this case, IRS Commissioner Charles O. Rossotti." *Id.* This case is distinguishable from *Rossotti* because PEER's request is not tailored to produce information about government misconduct, so the documents that will be produced are not "likely" relevant to important ethical or legal considerations of which the public should be aware. Moreover, PEER's request does not concern any "high level official" or head of an agency or department.

Citing *CREW v. United States Department of Health and Human Services ("CREW")*, PEER argues that the Court cannot deny PEER's fee-waiver request simply because it is unlikely that the requested documents will reveal misconduct. Pl.'s Mem. at 16–17, citing *CREW*, 481 F. Supp. 2d at 108–09. The Court does not dispute that "the informative value of a request depends not on there being certainty of what the documents will reveal." *CREW*, 481 F. Supp. 2d at 109. However, the problem with PEER's assertions of informative value here is not that PEER has failed to provide evidence that NMFS engaged in misconduct, it is that the documents PEER requested do not concern misconduct. Thus, even if the Court were to assume that NMFS is guilty of all of the legal and ethical violations that PEER and Combs allege, the requested documents are still not likely to increase public understanding about the functions of the

government. At the very most, the documents would shed light only on a personnel issue concerning one individual.

Since PEER has not shown that the documents it requested are likely to contribute to public understanding of the functions of government, it cannot find that PEER has satisfied its burden of proving that its request is made in the public's interest.

**c)    Factor 4:  The significance of the potential contribution to public understanding**

PEER also fails to satisfy its burden with respect to the fourth factor of the NMFS's public interest test because it does not demonstrate that the potential contribution of the requested information to the public understanding of the functions of government is significant. Satisfaction of this factor turns on how much the disclosure of the particular information requested will enhance the public's understanding of the subject in question. 15 C.F.R. § 4.11(k)(2)(iv).

Even if the Court were to find that the disclosure of personnel information related to Combs is relevant to increasing the public understanding of some element of agency operations – which it does not – the Court cannot find that the impact of the information would be at all *significant* because, at most, the information would shed light only on the agency's interaction with one contract worker.[7]  PEER claims that responsive information concerning the agency's communications surrounding Comb's termination will demonstrate agency "mismanagement." AR 00013.  Even if the documents do reveal mismanagement, however, the information

---

7        NMFS noted this in its denial when it stated the following:  "[t]o the extent that some of the information requested may provide some insight into the observer program, you have failed to show that the information will, beyond what is already available on the observer program, significantly contribute to an understanding of the specific government operations or activities by the public at large."  AR 00028, citing *Judicial Watch, Inc. v. DOJ*, 366 F.3d 1108, 1127 (D.C. Cir. 2004).

responsive to PEER's request can only potentially reveal mismanagement of one contract worker, which would not provide any "significant" window into the agency's operations on the whole. As the Court has already described, PEER's request is not tailored to reveal pervasive mismanagement or a pattern of mismanagement; rather it is limited to the agency's dealings with one individual.[8]

PEER's strongest argument is that the information responsive to its request might reveal at least one case in which NMFS "downgraded performance evaluations, limited assignments, blackballed from future assignments or condoned any or all of the above" in retaliation for an observer's complaints of legal violations. AR 00013–14. However, even if the information has the potential to show that the NMFS retaliated against Combs, the Court cannot find that such information would contribute *significantly* to the public's understanding of how its government operates. The information would be of greater significance to Combs personally for the purpose of pursuing legal recourse against the agency.

PEER also claims that disclosure of the information will contribute significantly to public understanding because it is uncontested that the internal NMFS documentation sought here is not already in the public domain. Pl.'s Mem. at 23–24. The Court does not dispute that one reason a court might find that a requester has not satisfied this factor is that the public domain is already saturated with information about the topic that the requested documents will illuminate. *See, e.g.*, *Monroe-Bey v. FBI*, 890 F. Supp. 2d 92, 97 (D.D.C. 2012) (holding that the requester had not satisfied this factor because the requested information had been previously provided pursuant

---

8      PEER also asserts that the public has a keen interest in the "sustainability of fishing harvests" and "the negative impacts of fishing practices on federally listed threatened and endangered species," AR 00013, but still fails to explain how release of information related solely to observer Combs illuminates either of these areas of public interest.

to prior FOIA requests and was therefore already in the public domain); *Campbell v. DOJ*, 164 F.3d 20, 36 (D.C. Cir. 1998) ("[The] mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met the threshold level of public dissemination will not further public understanding."). However, the mere fact that PEER's request seeks information that is not already in the public domain is not sufficient to show that release of the requested information would affirmatively make a significant contribution to public understanding of how the government operates. *See, e.g.*, *VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55 (D.D.C. 2002) (determining that the release of internal DEA reports concerning the agency's industrial hemp policy, which were not already part of the public domain, would not contribute significantly to public understanding because the only justification provided by the requester, that the documents "will contribute significantly to public understanding of DEA operations," was too "lofty" and did not "provide specific information" regarding the significance of the release). Here, PEER fails to meet its burden because the scope of its request is too narrow to reveal documents that will make any significant contribution to public understanding of the agency's operations.

Because PEER fails to demonstrate that the information it has requested from NMFS is likely to contribute in any significant way to public understanding of government operations or activities, the Court will uphold the agency's decision to deny PEER's fee-waiver request.

**CONCLUSION**

Accordingly, the Court will grant defendant NMFS's motion for summary judgment and deny plaintiff PEER's cross-motion. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 11, 2013